[No. G029933. Fourth Dist., Div. Three. Oct. 30, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN WALTER PIGAGE, Defendant and Appellant.

## COUNSEL

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia E. Garcia and Douglas P. Danzig, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOORE, J.**—A jury convicted defendant Stephen Walter Pigage of possession of ephedrine and pseudoephedrine with the intent to manufacture methamphetamine (count one) and possession of methamphetamine as a lesser included offense to possession of methamphetamine for sale (count two). The jury also found true allegations defendant served a prior prison term.

Defendant challenges the court's denial of his *Marsden*[1] motion and two motions to continue trial for the purposes of (1) further investigation, and (2) to obtain new counsel, and the court's proceeding with the trial in his absence. He also claims the prosecutor committed multiple instances of misconduct.

We find no basis for a reversal of the judgment. However, Deputy District Attorney Mike Flory's conduct does warrant public condemnation. Flory's complete disrespect for the court's authority, repeated threats to disobey a court order, and subsequent violation of that order, offend our sense of the court's inherent dignity. We publish this case because neither the prosecutor nor the Attorney General seemed to understand that Flory's actions constitute attorney misconduct. When the trial court asked Flory why he persisted in challenging the court's authority after a contrary ruling, he replied, "because I can, and I'm within the rules . . . ." When this court pressed the Attorney General to condemn Flory's actions, he refused and claimed he did so, "because that's my responsibility." Such a flagrant violation of an attorney's duty of respect for the court, compounded by a basic misunderstanding of the proper role of an advocate on appeal, presents "a legal issue of continuing public interest." (Cal. Rules of Court, rule 976(b)(3).) We affirm the judgment because most of the objectionable conduct occurred outside the presence of the jury and did not otherwise affect the trial. Nevertheless, we direct the clerk of the court to forward a copy of this opinion to the California State Bar for review and further proceedings.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

## I

## FACTS

*Prosecution evidence*

On April 8, 1997, a confidential informant introduced Paul Garaven, an undercover police officer, to defendant at a bar in Huntington Beach, California. They played pool and talked about motorcycles. Eventually, defendant directed the conversation to methamphetamine. Defendant asked about ephedrine, which Garaven said he could get, and defendant discussed the "aquarium" method of manufacturing methamphetamine and how to extract ephedrine from pseudoephedrine. Garaven told defendant he could sell him 60-milligram pseudoephedrine tablets and the two exchanged pager numbers.

For the next three days, Garaven taped several telephone conversations with defendant regarding the purchase of pseudoephedrine. During these conversations, defendant mentioned other "partners," and a friend who would "hold [his] hand through the first time." He told Garaven he was "not in a real big hurry to dive into this [with] both feet," and that "[t]his [was] all new to [him]." Defendant asked what "yield" he could expect from Garaven's product. He discussed paying Garaven with a combination of cash and cloned cell phones. He also expressed an interest in getting to know Garaven "a little bit," and having lunch together.

On April 11, in an unrecorded conversation, defendant and Garaven agreed to meet at another bar near the border between Huntington Beach and Fountain Valley. At this meeting, Garaven gave defendant a sample of the tablets he had for sale. Defendant showed Garaven a cloned cell phone. They played pool and talked about motorcycles. They walked out of the bar together and Garaven showed defendant the rest of the merchandise he had for sale. Defendant said he would get back to Garaven after he showed the samples to his friend. Defendant called one more time in late April, but nothing came from this series of telephone calls, so Garaven gave up on the case.

On May 14, defendant paged Garaven. Defendant said he had a friend who wanted to buy Garaven's pseudoephedrine tablets. He dickered with Garaven over the price. He asked what would happen "if the cops got you." Garaven told him "this stuff is in and of itself [] legal to posse[ss]." However, Garaven further explained that if it were processed, it would be illegal. Garaven even suggested, "the best thing to do would be uh, bring somebody else's car and say, 'F[__]. I didn't know that was in there. This ain't my car.' "

Eventually, defendant agreed to meet Garaven at the bar where they had first met. Garaven arrived with an arrest team and two or three unmarked

police cars. While the other officers waited outside, Garaven and a detective entered the bar. Although defendant was sitting alone, he mentioned that his friend was in the bar. Garaven and defendant played pool for a few minutes, then defendant went to a nearby table and spoke with Jesse Abbott. When defendant returned to Garaven, he said, "Let's do the deal." Garaven, defendant, and the detective walked out of the bar together. As they approached Garaven's truck, Abbott, who had also left the bar, threw a single key to defendant. Garaven opened the truck's passenger door and pointed to a duffle bag on the floorboard. Defendant handed $450 to Garaven and opened the duffle bag. The bag contained a case of mini-pseudoephedrine tablets. Defendant was arrested shortly thereafter. Abbott was also taken into custody.

A search of defendant's person yielded a pager. The key Abbott threw to defendant operated a rented car parked in the parking lot. Officers discovered a book on narcotics and hallucinogenics in the car's trunk. During a search of defendant's garage, officers found a long metal spoon, a cut straw, two plastic bags, a lighter, a razor blade, a propane torch, a small vinyl bag, a glass pipe, a digital scale, over two ounces of methamphetamine, and a list of names and numbers. Another $537 was discovered on defendant's person during the booking process.

*Defense*

Defendant argued an entrapment defense. He claimed to be solely interested in Garaven's companionship. Garaven used his desire for companionship as leverage to arrange a purchase of pseudoephedrine. Defendant called one witness, who testified that at least five people had access to and had been in defendant's garage the day of his arrest. This witness had also seen Abbott holding the vinyl bag, but had not seen defendant touch it.

## II

## DISCUSSION

*Motion to continue and right to counsel*

Defendant contends the court erroneously denied two motions to continue and deprived him of his Sixth Amendment right to retain counsel of his choice. We disagree.

A brief overview of the procedural history of the case is appropriate. The court arraigned defendant on the information on July 1, 1997. Initially, the public defender was appointed, but a conflict was declared and the alternative

public defender subsequently received the appointment. Defendant was released on bail. In early September, the court issued a bench warrant for his arrest. Several days later the court recalled its warrant and reinstated bail. The court advised defendant that a five-minute delay in his next appearance would result in his being taken into custody. Nevertheless, defendant failed to appear on the next court date. The court forfeited bail and issued a $10,000 bench warrant on October 17. Bail was reinstated on October 29, and sometime between October 29 and January 2, 1998, defendant retained private counsel.

The case was continued several times in early 1998. In April, defendant's retained counsel declared a conflict and was relieved. On April 24, the court reappointed the alternative defender's office. In July, the court granted the prosecution's motion to continue the trial. On September 4, the court vacated defendant's bail and issued a $50,000 bench warrant after he failed to appear in court. Bail was reinstated and the bench warrant recalled on September 8. Defendant had the same deputy alternate defender for the next four and one-half months. However, a new attorney is listed as counsel on October 14.

On November 2, defendant appeared with yet another deputy alternate defender, Dave Dziejowski. Dziejowski moved to continue the trial from November 2 to November 9 in order to allow him time to interview certain defense witnesses. Defendant failed to appear in court at 9:00 a.m. on November 9. A bench warrant was issued for his arrest at 9:15 a.m., but recalled at 2:15 p.m. On November 12, Dziejowski again moved to continue the trial. He represented that defendant had given him new information regarding the $537 seized during defendant's booking search. Counsel could not explain why the information had been only recently revealed and the court denied the motion.

At this point, defendant made a *Marsden* motion. At the hearing on the motion, defendant complained that counsel had failed to conduct adequate investigation and obtain witnesses. Counsel stated that he had met his client for the first time on November 2 due to defendant's failure to make scheduled appointments. After meeting defendant, Dziejowski submitted supplemental investigation requests, but discovered no new information. The court concluded defendant had failed to cooperate with his attorney, but the rift between counsel and client did not merit a change in counsel.

At this point, defendant requested a continuance to retain private counsel. The court concluded, "[I]t's too little too late. Here we are, three days after the case was scheduled to begin, and I'm not going to delay any further unless there is a real decent reason why I should. If you wanted private counsel, you could have gotten private counsel." On November 16, during jury selection, defense counsel filed another motion to continue, again listing a

need to do additional investigation and locate a witness identified by defendant on November 12. The court concluded this request was untimely and denied the motion.

Defendant first contends the court erroneously denied his motion to continue for the purpose of further investigation. "The granting or denial of a motion for continuance rests within the sound discretion of the trial court." (*People v. Mickey* (1991) 54 Cal.3d 612, 660 [286 Cal.Rptr. 801, 818 P.2d 84]; see also *People v. Michaels* (2002) 28 Cal.4th 486, 525 [122 Cal.Rptr.2d 285, 49 P.3d 1032].) There was no abuse of discretion. The case had been continued several times at the request of both parties over the course of 15 months. The basis for counsel's first continuance request was that defendant had just provided him with "potentially important evidence" two days before the trial was to begin. He reasserted essentially the same justification four days later, and again on November 16. However, on each occasion, defendant failed to present good cause for the delay in reporting this information and the court properly denied counsel's requests for a continuance. (Pen. Code, § 1050, subd. (e).)

With respect to the court's decision to deny defendant's *Marsden* motion, "[w]e review a trial court's decision declining to relieve appointed counsel under the deferential abuse of discretion standard. [Citations.]" (*People v. Jones* (2003) 29 Cal.4th 1229, 1245 [131 Cal.Rptr.2d 468, 64 P.3d 762].) None is apparent here. Defendant reported the various difficulties he had with his attorney, including a perceived lack of investigation and help with various threats to his life and his family; however, the court found his testimony unreliable. Defense counsel mentioned his conversations with his client had at times been hostile, but he had investigated every lead given him by defendant and been cooperative. There is nothing in the record to cast doubt on the court's credibility call.

As to defendant's request for a continuance to seek private counsel, the court's decision to deny the request is reviewed as an abuse of discretion. (*People v. Blake* (1980) 105 Cal.App.3d 619, 624 [164 Cal.Rptr. 480].) Once again, defendant fails to demonstrate the court erred. Defendant stated he had exchanged "strong words" with his counsel and "[did] not feel confident" in his appointed counsel's representation. However, he waited until the last minute to express these concerns. There is no evidence defendant attempted to retain counsel, or had even taken steps to secure funds to hire private counsel, although his problems with appointed counsel apparently began before November 2. Under the circumstances of this case, the court's decision to deny the request for continuance to obtain counsel does not constitute an abuse of discretion or a denial of his Sixth Amendment right to counsel. (See *People v. Courts* (1985) 37 Cal.3d 784, 790–791 [210 Cal.Rptr. 193, 693 P.2d 778].)

Appellate counsel's assertion that, "had the trial court granted [defendant] a continuance to retain an attorney, one who he trusted enough to prepare his case and present additional available evidence on [defendant's] behalf, [he] most likely would have been acquitted[,]" is hyperbole at its worst. This was not a close case. We have defendant's representations of "other evidence" that would vindicate him standing next to facts established at trial. This may have been defendant's maiden voyage into methamphetamine manufacturing, but for everything there is a first time. Based on our review of the record, defense counsel performed at or above an objective standard of reasonableness in his efforts to present a defense.[2]

*Absence from courtroom*

Defendant failed to return to court as ordered on the second day of trial. Before court reconvened, defendant informally contacted the court and advised that he was in the vicinity of the courthouse, but reluctant to come to court because he might be placed in custody. The court conducted a hearing to permit defendant to explain his absence. Defendant's girlfriend testified that defendant had received numerous threats and harassing telephone calls, and someone had slashed the tires on his car early that morning. She claimed he feared being taken into custody because of certain statements he made to police about Abbott. Ultimately, she pleaded with the court to "please consider these things and not tak[e] Mr. Pigage into custody and continue on with the case today."

Counsel also represented that his client had informed him of the threats on his life and, on one occasion, counsel had seen evidence of vandalism to defendant's car. Counsel also pointed out that defendant had sought medical treatment the day before and received a diagnosis of "stress syndrome." The court dismissed the witnesses and gave defendant approximately one hour to appear. Neither defendant nor his girlfriend returned to court at the expiration of this time period. No explanation for their failure to appear, or defendant's initial failure to appear that morning, was forthcoming. The court concluded defendant voluntarily absented himself from court and ordered the parties to proceed in his absence. The court also denied defense counsel's request for a mistrial and/or a one-day continuance. After trial resumed, the court admonished the jury to not consider defendant's absence in reaching its verdict.

Defendant contends the trial court erred by continuing the trial in his absence. We disagree. Penal Code section 1043, subdivision (b)(2) permits a

---

[2] Defendant's motion for a new trial was based, in part, on the assertion he received ineffective assistance of counsel due to counsel's failure to investigate and interview various witnesses. This motion was denied by the trial court, and defendant does not appeal from this ruling.

trial to continue in the absence of the defendant in "Any prosecution for an offense which is not punishable by death in which the defendant is *voluntarily absent.*" (Italics added.) ■ We balance a felony defendant's constitutional and statutory right to be present at trial with the society's interest in the orderly process of court. (*People v. Connolly* (1973) 36 Cal.App.3d 379, 384 [111 Cal.Rptr. 409].) A criminal defendant may not frustrate this process by refusing to appear. (*Ibid.*) "A crucial question must always be, 'Why is the defendant absent?' This question can rarely be answered at the time the court must determine whether the trial should proceed. Consequently, in reviewing a challenge to the continuation of a trial pursuant to Penal Code section 1043, subdivision (b)(2), it must be recognized that the court's initial determination is not conclusive in that, upon the subsequent appearance of the defendant, additional information may be presented which either affirms the initial decision of the court or demands that defendant be given a new trial. It is the totality of the record that must be reviewed in determining whether the absence was voluntary." (*People v. Connolly, supra,* 36 Cal.App.3d at pp. 384–385.) The totality of the record supports the trial court's ruling.

■ With defendant's appearance history, explanations, and mental condition in mind, the court determined that his fears, reasonable or unreasonable, were insufficient justification for his absence from court. We agree. Defendant had many options to ensure his safety either in or out of custody. Simply refusing to appear unless the court promised he would remain on bail was not one of them. If he suffered from physical or mental strain, appearing in court is the first step to seeking a continuance or other consideration. As has been noted elsewhere, half of life is just showing up. He now contends the court could have done more to discover the reasons for his absence. At the conclusion of the hearing, defense counsel requested additional time to "potentially present additional evidence." But counsel was then unaware of any other circumstances the court should have considered, and no further evidence was presented during trial, although the court indicated it would consider such evidence if presented. Defendant voluntarily absented himself from the proceedings. The court's decision to complete the trial in defendant's absence did not violate his constitutional or statutory right to be present at trial.

*Prosecutorial misconduct*

Defendant claims the prosecutor misstated the facts and the law, suggested defense counsel behaved unethically, and violated a court order during closing argument. The first assertion warrants little comment, but the second and third merit a full reproduction of the record and several remarks.

Defendant first claims Flory misstated the law of entrapment. True, the prosecutor muddled the concepts involved in the entrapment defense and

focused on defendant's predisposition to commit the crime. ■ However, assuming error, the jury is presumed to have read and understood the instructions given it. (*People v. Lewis* (2001) 26 Cal.4th 334, 390 [110 Cal.Rptr.2d 272, 28 P.3d 34].) The court instructed the jury with CALJIC No. 4.61, the standard entrapment instruction. It also explained that the statements of counsel are not evidence. Nothing in the record suggests the jury misunderstood the instructions or misapplied the law.

During closing argument, Flory made reference to the list of names and numbers found in defendant's garage. In rebuttal argument, Flory stated, "And the defense kind of played some dirty tricks on you. They said, 'Well, the prosecution could have had the handwriting analyzed. And that's true, I could have. The judge can order a handwriting exemplar for the defendant. It would be quite a trick in this case, getting a handwriting from someone who's not here." The comment was followed by another defense motion for mistrial, which was denied by the court. The court reinstructed the jury to disregard the defendant's absence and Flory finished his rebuttal argument.

Defendant argues Flory improperly disparaged defense counsel by claiming the defense played dirty tricks. Generally, counsel is given great leeway in closing argument. (*People v. Farnam* (2002) 28 Cal.4th 107, 200 [121 Cal.Rptr.2d 106, 47 P.3d 988].) The Attorney General champions this rule and claims Flory commented on defendant's absence to rebut the defense's suggestion that the prosecution hid evidence from the jury. However, we reach quite a different conclusion with the benefit of the entire record.

As noted above, the trial court instructed the jury to disregard defendant's absence in arriving at its verdict. The decision to so admonish the jury came after a heated debate, outside the presence of the jury, between the court and counsel: "The court: [¶] . . . [¶] Let's consider now how we handle this. Because, you know, the presence or absence of the defendant is really not evidence, and it's not—presented to the jury. He hasn't really fled like from custody. It's not like somebody about to be arrested that takes off. Tell me, Mr. Flory, how do you deal with this? [¶] Mr. Flory: I'm going to argue flight as a consciousness of guilty. I will bring in cases which say I can do that, your honor. [¶] The court: Flight from the trial itself? [¶] Mr. Flory: As consciousness of guilt. It's a very powerful argument. And it's a powerful statement by the defendant not to show up in the middle of his jury trial. [¶] The court: It is so powerful that's the reason that causes me concern. I want to be sure that we are on solid ground as to how to handle it. So maybe the best thing to do would be allow both of you to look into that and let me know what you come up with at 1:30 sharp. Then I will make the ruling. [¶] Mr. Flory: I'll have cases for you at that time. [¶] The court: I'll look myself. [¶] [Defense counsel]: And I'll continue to try to get my client here. [¶] The court: If Mr. Pigage shows up, then we'll deal with that when it happens."

When the court reconvened at 1:30 p.m., the colloquy between the court and Flory resumed: "The court: The People have presented the court with a couple of cases on the issue that we were discussing before the lunch break, and that is, how to manage the fact that the defendant will not be present as we proceed with the trial. [¶] The court is concerned that perhaps it would be appropriate for the court, on its own motion, to instruct the jury in some way or other. [¶] It appears that the People wish to request an instruction and argue the issue of flight as evidence of guilt in connection with the absence of the defendant. Is that still correct, Mr. Flory? [¶] Mr. Flory: Yes, your honor. It's pretty well settled as the cases discuss, the *Vargas*[3] case and *Snyder*[4] case, the flight instruction is appropriately argued. And that's my intention at this point, your honor. [¶] The court: Well, looking at *Snyder*, it looked like that was just sort of an also random kind of an issue, that they were really worried more about the appropriateness of the proceeding under 1043. [¶] Mr. Flory: On page 199 of the *Snyder* case, the very first sentence, the discussion says, 'It is proper for the court to instruct the jury in the language set forth above, since, in the absence of any explanation, it would be reasonable to infer that defendant's absence was voluntary, and it was a fact relevant to the determination of his guilt or innocence, that being of flight.' [¶] The court: Point me in the *Vargas* case the applicable portion. There is a reference on 521. [¶] Mr. Flory: Okay. [¶] The court: Page 529, I think that might be it. [¶] Mr. Flory: Yes. 529, the bottom paragraph your honor. [¶] The court: [Defense counsel], do you wish to be heard? [¶] [Defense counsel]: Yes. Your honor. My first objection to allowing for some sort of instruction on my client's absence that would be used in the prosecution's favor is that we really won't have evidence, other that the empty chair, that he is in fact absent and has done so voluntarily. I suppose the court could make a finding to the jury, which it has already done. However—[¶] The court: Not to the jury. [¶] [Defense counsel]: Exactly. But I suppose the court could announce to the jury the defendant has voluntarily absented himself and we're proceeding, and then from that—but that becomes evidence, I imagine, subject to cross-examination. My concern is there wouldn't be any evidence, other than this empty chair, that he's not here. [¶] The court: You know what? I'm going to save some time here. I agree with you. I don't necessarily disagree with the two cases that have been presented by the People. I may be going out on a little bit of a limb here, but I think the safe course to follow is to not allow the flight instruction. [¶] Mr. Flory: I've given you cases on point. How can you make that ruling? [¶] The court: Well, all those cases say it was not error for the court to give the instruction. [¶] Mr. Flory: I'm going to argue it because it's not error to argue it. [¶] The court: Try not to interrupt me, okay? The reason that I think that it would be inappropriate is because the absence of the defendant is not

---

[3] *People v. Vargas* (1975) 53 Cal.App.3d 516 [126 Cal.Rptr. 88].
[4] *People v. Snyder* (1976) 56 Cal.App.3d 195 [128 Cal.Rptr. 297].

evidence, and I think it's a real stretch. I mean, when we tell the jurors over and over and over again that they're only to decide the case based upon the evidence that's presented and not on anything else, we—if a defendant acts up, we tell the jurors to disregard that and not to allow that to influence their decision. [¶] We in fact have very limited evidence as to why the defendant is absent or whether or not that absence has some basis in fact other than consciousness of guilty. It puts the defendant in an awkward position of trying to present evidence on the reasons that the defendant absented himself from the proceeding to try to negate the inference that his absence from the proceedings which is really not flight in the traditional sense—that was for some reason other than a consciousness of guilt. [¶] I think the safer course is to not give the instruction and to advise the jury that they obviously have noticed that the defendant is not present. We are proceeding without his being present, and that they are not to base a decision of guilt or innocence on the presence or absence of the defendant in the courtroom. I think that's the safe course to follow. And while the People certainly do have an argument, and in the case law there is authority for the proposition that it would not be improper to give instructions on flight, I would fear that it may be improper under these circumstances. So that's what we're going to do. [¶] Mr. Flory: With all due respect, your honor, I'm still going to argue—not the flight instruction, obviously—but I'm going to argue consciousness of guilt for him not being here. I have pulled cases for the court which show that [*sic*] is proper, and I am just letting everyone know I'm arguing it. [¶] [Defense counsel]: Your honor, I would object to that argument and request the court to admonish the prosecution not to argue that point. [¶] The court: I think under my ruling that would be improper argument. [¶] Mr. Flory: I'm still going to argue it, with all due respect. [¶] The court: Well, in the face of my ordering you not to, Mr. Flory? [¶] Mr. Flory: Yes. [¶] The court: I think that's unwise. [¶] Mr. Flory: I have cases to back me up in this one, your honor, with all due respect—I really do mean that. But by limiting me from arguing something which the Court of Appeal says I can argue—is I don't want to say a bad ruling. I do mean with all due respect. [¶] The court: Well, Mr. Flory, let me just ask you to review that in your mind, because I think violating a direct order of the court, regardless of what you think the cases say, is really improper on your part, and I don't think you need to do that in this case. [¶] Mr. Flory: I'll think about it. [¶] The court: I know the evidence is compelling. The defendant is on his back. Why do you need to push it? [¶] Mr. Flory: Because I can, and I'm within the rules of doing it. [¶] . . . [¶] The court: Not when you're violating a court order. I may declare a mistrial. [¶] Mr. Flory: I understand the consequences. I'm just letting you know up front. [¶] The court: I guess we don't get weak fish for these kinds of jobs, and I understand the people feel strongly. And the desire to be a good advocate is a strong desire, but I would counsel you to think carefully before you violate an order of this court. [¶] . . . [¶] Mr. Flory: I understand. And let me ask the

court one thing. The defense is going to put on some witnesses. I would ask the court to not make that ruling and reserve until the defense witnesses testify, because I will be asking them about that, 'Where is the defendant?' type line of questioning. [¶] The court: Why would that be relevant? [¶] Mr. Flory: Because it could show consciousness of guilt. If they say he didn't want to appear because he was afraid he might be convicted—I don't know what they will say. I will be testing the water, so to speak. I would ask the court not to make that order at this point. [¶] . . . [¶] The court: I think such a question might conceivably be outside the scope of the direct examination, and I guess we can test that as it comes. But, Mr. Flory, if what you're proposing to do is an end-run around my order, again I don't think that's a very wise thing to do. [¶] Mr. Flory: Your honor, it's not an end-run around the order. Relevant evidence, I think we all can agree, is, 'Where is the defendant?' I think that's relevant evidence. [¶] The court: Is it? Seems to me that's—my point is I don't think it's relevant. [¶] Mr. Flory: You don't think the fact that we're mid-trial and the defendant suddenly, voluntarily—and you already made that finding—voluntarily is not here, you don't think that's relevant evidence? [¶] The court: I think you're beginning to understand my order. I don't think that's evidence. [¶] Mr. Flory: I don't know what to do. I have pointed out cases that say it is evidence. [¶] The court: They don't say it directly. [¶] Mr. Flory: Well, we just disagree, which is fine. [¶] The court: I think that's the best thing. You disagree with me. You go down to the D.A. office and say, 'Boy! That Waldrip sure is a dunce', but don't violate the order. [¶] Mr. Flory: We just disagree. That's fine. [¶] The court: You know, from my perspective, what I'm doing is taking the larger picture into account, kind of the long view, if you will. And I think, frankly, that this is the best way to proceed. [¶] Mr. Flory: I understand. [¶] The court: [¶] . . . [¶] So, you've got a good case. I would counsel you not to mess it up by getting yourself crossways with the court. I think you have said enough about that."

As noted, Flory made a subsequent reference to defendant's absence during rebuttal argument. The Attorney General argues that we cannot accurately interpret the cold record, not having observed Flory's body language and heard his intonation. We disagree. Under no set of circumstances is Flory's behavior justified. The prosecution had access to defendant's handwriting exemplar prior to trial. If the prosecution sought their own exemplar, a *pretrial* motion would have been appropriate. The case had been continued many times over the course of several months, and defendant had made numerous appearances. Flory's suggestion defendant's absence at trial made it difficult to obtain an exemplar is astonishing in light of the facts, and constitutes a knowing violation of the court's order. There is simply no other reasonable interpretation of Flory's conduct.

The Attorney General further argues Flory's legal position was "right." However, the correctness of the court's decision is not the issue.[5] "It is the imperative duty of an attorney to respectfully yield to the rulings of the court, *whether right or wrong* [citations]." (*Hawk v. Superior Court* (1974) 42 Cal.App.3d 108, 126 [116 Cal.Rptr. 713], italics in original.) ■ As an officer of the court, Flory owes a duty of respect for the court. (Bus. & Prof. Code, § 6068, subd. (b).) Flory's continued bickering with the court and threats of disobedience, even at the risk of a mistrial, cannot be characterized as mere advocacy. His further decision to defy the court's order is outrageous misconduct.

This unacceptable behavior is made all the more compelling because the Attorney General refused to condemn such conduct when given the opportunity. At oral argument, the Attorney General stated, "I do believe he was right as a matter of law . . . I believe he was simply making a vigorous argument in attempt to gain the court's consent to his making an argument in getting an instruction on flight. And I think he was right that the instruction should have been given. But I am certainly not going to defend a tone or the manner in which he did it. I wasn't there. And it's difficult to determine from the record. And it's simply not an issue in this case." Actually, misconduct by the prosecutor is an issue in this case, and this type of misconduct is but one example of an alarming trend.

Flory justified his actions by a claim of right. He persisted in the face of a contrary ruling stating, "because I can, and I'm within the rules of doing it." The Attorney General defends the indefensible "[b]ecause that's my responsibility." Apparently, this particular form of disrespect for the court is overlooked unless it results in a reversal of the conviction. But "[o]ur legal system, indeed the social compact of a civilized society, is predicated upon respect for, and adherence to, the rule of law." (*People v. Chong* (1999) 76 Cal.App.4th 232, 243 [90 Cal.Rptr.2d 198].) "[I]t is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standard of ethics, civility, and professionalism in the practice of law. In order to instill public confidence in the legal profession and our judicial system, an attorney must be an example of lawfulness, not lawlessness." (*Ibid.*) Flory actively undermined the cause of legal professionalism and respect for our judicial system.

On the other hand, we applaud Judge Waldrip on his unparalleled display of good judicial temperament. His repeated suggestions to pause and consider

---

[5] However, we find no error in the court's decision. As the court noted, the facts surrounding defendant's absence were not well developed. There could have been many explanations for defendant's absence having nothing whatsoever to do with consciousness of guilt. The court's decision to preclude speculation on the reasons for defendant's absence is well within its discretion.

the consequences exhibit a rare degree of patience, wisdom, and restraint. Flory's conduct warranted a citation for contempt, not understanding. (Code Civ. Proc., § 1209, subd. (a)(5).) Nevertheless, this judge decided to sit above the fray and bring the case to a verdict. An admirable decision not mirrored by the "People's" representative.

Nevertheless, while we agree with defendant's assertion Flory committed misconduct, we find no basis for a reversal of the judgment. ■ To rise to the level of deprivation of the Fourteenth Amendment to the federal Constitution, prosecutorial misconduct must infect the trial with such unfairness as to make the conviction a denial of due process. (*Donnelly v. DeChristoforo* (1974) 416 U.S. 637, 642–643 [40 L.Ed.2d 431, 94 S.Ct. 1868]; *People v. Hill* (1998) 17 Cal.4th 800, 819 [72 Cal.Rptr.2d 656, 952 P.2d 673].) Misconduct by a prosecutor that does not render a criminal trial fundamentally unfair is error under state law if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. (*People v. Morales* (2001) 25 Cal.4th 34, 44 [104 Cal.Rptr.2d 582, 18 P.3d 11].) Misconduct that infringes upon a defendant's constitutional rights mandates reversal of the conviction unless the reviewing court determines beyond a reasonable doubt that it did not affect the jury's verdict. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]; *People v. Hall* (2000) 82 Cal.App.4th 813, 817 [98 Cal.Rptr.2d 527], citing *People v. Harris* (1989) 47 Cal.3d 1047, 1083 [255 Cal.Rptr. 352, 767 P.2d 619].) A violation of state law only is cause for reversal when it is reasonably probable that a result more favorable to the defendant would have occurred had the district attorney refrained from the untoward comment. (*People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]; *People v. Milner* (1988) 45 Cal.3d 227, 245 [246 Cal.Rptr. 713, 753 P.2d 669].) In either case, only misconduct that prejudices a defendant requires reversal (*People v. Fields* (1983) 35 Cal.3d 329, 363 [197 Cal.Rptr. 803, 673 P.2d 680]), and a timely admonition from the court generally cures any harm. (See *People v. Gallego* (1990) 52 Cal.3d 115, 200 [276 Cal.Rptr. 679, 802 P.2d 169].)

■ Flory's threat to defy the court's order was unprofessional and improper, and his decision to act on this threat was outrageous. Nevertheless, the lion's share of this misconduct occurred outside the presence of the jury. The jury heard a single reference to defendant's absence, one immediately followed by a court admonition not to consider this fact during deliberation. We conclude this single reference, although preceded by an inexcusable display of contempt, did not prejudice the defendant. It is not reasonably probable defendant would have received a more favorable result in the absence of Flory's single reference to his absence.

## III

## DISPOSITION

The judgment is affirmed. The clerk of the court is directed to forward a copy of this opinion to the California State Bar for review and further proceedings, if appropriate.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied November 21, 2003, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 22, 2004.