Filed 5/30/13  P. v. Azzara CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RICHARD MATTHEW AZZARA, <br><br> Defendant and Appellant. | B240981 <br><br> (Los Angeles County <br> Super. Ct. No. SA075752) |

APPEAL from judgment of the Superior Court of Los Angeles County, Elden S. Fox and Richard A. Stone, Judges.  Affirmed.

Peter Knecht for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

Defendant Richard Matthew Azzara appeals the judgment of conviction on charges of identity theft, forgery, unlawful access card activity, and drug

possession.  Azzara contends that (1) insufficient evidence supported his conviction for identity theft; (2) the trial court violated his constitutional rights by denying his request for a continuance on the first day of trial so that he could retain private counsel; and (3) the trial court erred in failing to hold a *Marsden* hearing. We find no error and affirm the judgment.

## BACKGROUND

### I. *Charges*

Azzara was charged with two counts of identity theft, as to victims Rebecca Buckalew and Connie Gonsalves (Pen. Code, § 530.5, subd. (a)),[1] one count of forgery (§ 484f, subd. (a)), one count of unlawful access card activity (§ 484i, subd. (c)), and one count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).  It was also alleged that Azzara had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and served a prior prison term (§ 667.5, subd. (b)).

### II. *Evidence at Trial*

On August 13, 2010, Deputy Hector Mancinas of the Los Angeles County Sheriff's Department stopped a black 2007 Mercedes CLS with no license plate, driven by Azzara.  Deputy Mancinas searched the vehicle and found a wallet in the back seat that contained a driver's license with Azzara's photograph but bearing the name of "Robert Maguire."  Deputy Mancinas ran a check of that license and discovered the information did not match.  The wallet also contained two credit

---

[1]     All subsequent undesignated references to code sections are to the California Penal Code.

cards with the name "Robert Maguire" as well as nine fraudulent gift cards. A search of Azzara's person yielded $2,057 in cash.

After he was arrested and read his *Miranda* warnings, Azzara told Deputy Mancinas that a friend had showed him how to make credit cards using an embosser, a machine that imprints information onto magnetic strips on credit cards. Azzara admitted he had an embosser, credit cards, and identity profiles of people in his home and that he had made credit cards.

Later that day, Deputy Mancinas, along with other deputies and Detective Phillip Briones, tried to access Azzara's residence using keys he had given them. They could not open the door; Detective Briones believed the door was locked from the inside. The deputies thought they heard a toilet flushing inside, and several lights were on in the house. They left after 30 minutes.

They returned several days later with a search warrant; the residence was not under surveillance in the interim. No one was home and they forced entry. They searched the residence and found bills and other paperwork bearing Azzara's name. They also found an embosser machine, numerous blank gift cards and credit or debit cards, shredded plastic gift and credit cards, carbon stripping consistent with magnetic strips, computer towers, two external hard drives, numerous laptop computers, small photographs of Azzara that were the size of a driver's license or passport photo, and a Fargo printer, which is used to print logos or pictures on credit and debit cards. One of the hard drives contained two documents, each of which contained 40-50 credit card profiles, including names, an account number, and in some instances an expiration date. Included was account information for Rebecca Buckalew and Connie Gonsalves, both of whom recently had fraudulent activity on their accounts. A small amount of what appeared to be methamphetamine was found.

After the search, Detective Briones questioned Azzara, who was in custody. Azzara admitted that the embosser and the computer towers found in the residence belonged to him. He admitted that he used the embosser to create fraudulent gift cards.

However, Azzara stated that he had no knowledge of the blank credit and debit cards found in his residence and did not know that they were in his house. At one point in the interview he stated that the external hard drives belonged to him, but later said they were not his. He denied that any of the other items belonged to him. He stated that the Fargo printer belonged to two other men, an Asian named Gin and an Armenian named Mike, who used it to create fraudulent gift cards. Azzara stated that he was in contact with the two men on a weekly basis and was present each week when they used his residence and his computers to make 40-50 fraudulent gift cards at a time. They would pay him four or five fraudulent gift cards in return.

III. *Verdict and Sentencing*

The jury found Azzara guilty on all five counts, and the court found true the prior conviction allegations in a bifurcated trial. The court selected the upper term of three years for the first count of identity theft, doubled pursuant to the Three Strikes law. The court struck the prior conviction for purposes of sentencing on the remaining counts and dismissed the prior prison term enhancement pursuant to section 1385. The court imposed a consecutive eight-month term on the drug possession count and concurrent terms on the remaining counts. This timely appeal followed.

4

**DISCUSSION**

I. *Sufficiency of the Evidence to Support Identity Theft Conviction*

Azzara challenges the sufficiency of the evidence for his conviction under section 530.5, which provides in pertinent part that "[e]very person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense." (§ 530.5, subd. (a).) "In order to violate section 530.5, subdivision (a), a defendant must both (1) obtain personal identifying information, and (2) use that information for an unlawful purpose." (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 455.) Azzara contends that insufficient evidence supported his convictions for identify theft because no evidence established that he obtained the debit or credit card information of victims Gonsalves and Buckalew or that he used it for unauthorized transactions.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) Reversal of a conviction for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Where substantial evidence supports a conviction, we must affirm, even though the evidence would also reasonably support a contrary finding. (*People v. Towler* (1982) 31 Cal.3d 105, 118.)

5

"Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Azzara contends that no evidence was presented that he obtained or used the debit or credit card information found on the hard drive in his home. He notes that he denied knowledge of the presence of the blank credit cards in his home and denied knowledge of the contents of the hard drives in his interview with Detective Briones. He further emphasizes the lack of direct evidence tying him to the fraudulent activity on Gonsalves' and Buckalew's account. We conclude, however, that sufficient evidence supported the jury's findings that he obtained and used the personal identifying information of these two victims.

First, Azzara initially told Detective Briones that the hard drives (which contained Gonsalves' and Buckalew's information) belonged to him, before changing his story to deny that they were his. The jury reasonably could have believed his original statement to be the true version. Moreover, the jury was entitled to rely on Azzara's admissions to Deputy Mancinas at the time of his arrest that he had an embosser, credit cards, and people's identity profiles in his home, and that he used the embosser to make credit cards. Based on this evidence, the jury reasonably could find beyond a reasonable doubt that Azzara obtained the personal identifying data on the hard drive found in his home and that he was responsible for the unlawful use of Gonsalves' and Buckalew's information. As such, sufficient evidence supported his conviction for identity theft.

6

II. *Azzara's Request for Continuance in Order to Retain Counsel*

Azzara contends that the trial court violated his constitutional right to the effective assistance of counsel when it denied his request for a continuance on the first day of trial so that he could retain private counsel.

A. *Background*

Azzara was originally charged on November 29, 2010. At the preliminary hearing held on June 3, 2011, appointed counsel Leonard Garber represented him.

On October 21, 2011, after several continuances, the court ordered no further pretrial continuances. At the November 30, 2011 pretrial conference, the court set the trial for January 10, 2012. The trial was postponed several times. On February 21, 2012, the case was called for jury trial, and the trial court granted Azzara's request to proceed in pro. per. and relieved Garber as appointed counsel. Azzara completed an Advisement and Waiver of Right to Counsel form in which he initialed section 3.G, which read: "I understand that no continuance will be allowed without a showing of good cause, and that such requests made just before trial will most likely be denied." He also initialed next to Section 3.H, which stated: "I understand that depending on the stage of my case, if I ask to give up my pro. per. status and request counsel to handle my case, the Court may deny this request and I may have to proceed with trial without an attorney." The court ordered a panel of 40 jurors for February 23, 2012.

On February 23, 2012, after the court had ordered the jury panel brought to the courtroom for voir dire, Azzara stated: "I want to make one motion. I don't know if it's a motion really, but I just wanted to – I met with an attorney yesterday, and if it please the court, if it's possible, I could get the money together. It might take maybe up to 30 days because I know it's a lot. No pun intended. But if it's

7

possible to do that, I will be able to, you know, retain counsel and do it the right way and not be a fool." The court denied the request for a continuance.

The court proceeded to explain various procedural points to Azzara and asked that the jurors be brought in, after which the following colloquy took place:

"MR. AZZARA: Your Honor, is it – I need to retain counsel, and I can explain the reason why that I let the other – that a state appointed or what have you, why I let him go. There were a couple problems there. He was a great man, great attorney, very brilliant. But there were some evidentiary issues that he wouldn't bring in to evidence, and he kept telling me maybe somehow I could bring them in.

"THE COURT: Mr. Azzara, I have 36 jurors now –

"MR. AZZARA: I understand,

"THE COURT: -- that have been used and called. I explained to you on the other occasion that if you intended to relieve your attorney in this matter that you would have to either be prepared to proceed without counsel and/or have counsel present to start the trial. This case –

"MR. AZZARA: Okay. I thought it was the opposite.

"THE COURT: -- as we're clear, goes back well over a year –

"MR. AZZARA: Yeah.

"THE COURT: -- in terms of its process in this court. I do not intend to excuse the jurors for purposes of these proceedings. You have requested to represent yourself. You made that request at the airport [courthouse], and coming in on what I would call the eleventh hour and advising me that you would like me to burn 36 jurors in regard to this matter because now you've decided that you need an attorney is not the case. Apparently Mr. Garber, [I'm] notified, is

8

available.  He indicated he would be ready to proceed.  If you want Mr. Garber to be called and come here to handle this matter as your attorney, I'll notify his office.

"MR. AZZARA:  And then I can maybe get one after or – a private attorney after that?  Would that be okay?

"THE COURT:  We're starting trial, sir.  If you want me to call Mr. Garber's office and have him here . . .

"MR. AZZARA:  I'm sorry.  I didn't mean to – I didn't know it was starting today.  I thought we would have a few days to prepare and get things, like, taken care of.

"THE COURT:  Call the jurors in.

"MR. AZZARA:  No, Your Honor.  Your Honor, yes,  please.  Yeah.  Please.

"THE COURT:  Please what?

"MR. AZZARA:  I don't know what to do.  I want to hire Mr. Peter Knecht, but I have to have until Monday to pay him.  That's all you have to do.  Please.

"THE COURT:  Do you want me to contact Mr. Garber's office?

"MR. AZZARA:  I'd like to hire Peter Knecht is what I'd like to do.

"THE COURT:  Mr. Knecht is not here right now.

"MR. AZZARA:  I understand.

"THE COURT:  Neither is Mr. Garber, but Mr. Garber's prepared to proceed he indicated.  Do you want Mr. Garber to be contacted and become your attorney?

"MR. AZZARA:  I suppose so, Your Honor.

"THE COURT:  What does that mean, sir?

"MR. AZZARA:  I just means – I'd like – I don't want to waste anybody's time.  That's all.

9

"THE COURT:  Well, you're wasting my time now, sir.

"MR. AZZARA:  Well, no.  I just wanted to hire Mr. Peter Knecht, but it would have to be like until next week and then it would be no problem.  Monday, Tuesday.  No problem.

"THE COURT:  It's not going to be next week, sir.

"MR. AZZARA:  I don't –

"THE COURT:  Do you want Mr. Garber to come here and be your lawyer?

"MR. AZZARA:  Yes, I do.  I guess so, Your Honor.  Yes, please.

"THE COURT:  Would you call Mr. Garber's office and find out if he's available, please. . . .

"THE COURT:  Mr. Azzara, so there's no confusion, you want Mr. Garber to be your lawyer with the understanding that you're either going to proceed without counsel and/or proceed with Mr. Garber.

"MR. AZZARA:  Yeah.  I guess, Your Honor. . . .

"THE COURT:  . . .  Based on the conversations with the defendant as a self-represented litigant, he is making a request, although not timely, not entirely unreasonable based on the circumstances.  I've contacted counsel, Mr. Garber, who has prepared this case over the last year and a half.  He will be available tomorrow morning at 10:30.  I intend to bring the jurors in.  I intend to swear in the panel.  I intend to advise the jurors that Mr. Azzara's counsel had an emergency.  I will then order them back tomorrow morning at 10:30 to proceed with jury selection in this matter.  Ms. Avedissian, does that cause any problems for you right now?

"[PROSECUTOR]:  Not at this time; however, we're hoping to select the jury tomorrow so I could have a witness who's coming from out of town.

"THE COURT: I will make every effort to accomplish that, and we will discuss that with counsel when he's here tomorrow. I don't want to lose the jurors, and this case is going to proceed."

That afternoon, Mr. Garber appeared on behalf of Azzara during voir dire. The court stated, "I want to thank you for your efforts to be here this afternoon. Mr. Azzara has made a request of the court to withdraw his request as a self-represented litigant, and although you might not be his first choice, Mr. Garber, he is insistent that he wants counsel to represent him in this matter. You've advised the court that after these number of months, actually year and a half, that you would be prepared to proceed." Garber resumed his representation of Azzara.

B. *The Trial Court Did Not Abuse Its Discretion in Denying Continuance*

The trial court's decision to deny a defendant's request for a continuance to seek private counsel is reviewed for abuse of discretion. (*People v. Pigage* (2003) 112 Cal.App.4th 1359, 1367; see *People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) However, limitations on the right to continuances so that a defendant may hire private counsel of his own choosing are carefully circumscribed. (*People v. Courts* (1985) 37 Cal.3d 784, 790 (*Courts*).) Although "[a] continuance may be denied if the accused is 'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily chooses to substitute counsel at the time of trial,'" "trial courts should accommodate such requests – when they are linked to an assertion of the right to retained counsel – 'to the fullest extent consistent with effective judicial administration.' [Citation.]" (*Id.* at pp. 790-791.) "In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case, '"particularly in the reasons presented to the trial judge at the time the request [was] denied."' [Citation.]" (*Id.* at p. 791.)

11

In *Courts*, the court held that the trial court abused its discretion in denying the defendant's request for a continuance so he could bring on retained counsel for trial. (*Courts, supra*, 37 Cal.3d at pp. 795-796.) The record showed that the defendant "engaged in a good faith, diligent effort to obtain the substitution of counsel *before* the scheduled trial date," including contacting his desired counsel two months before the trial date, raising the funds soon afterwards and establishing a lawyer-client relationship, and informing the court of his efforts well in advance of trial and making a motion for a continuance more than a week before trial. (*Id.* at p. 791.) The court noted that "[t]hese facts are to be sharply contrasted with cases which have upheld the denial of a continuance on the ground that participation by a particular private attorney was still quite speculative at the time the motion for continuance was made," or cases where the continuance request was premised on the defendant's representation that he would eventually be able to hire private counsel. (*Id.* at p. 791, fn. 3.) Further, the court contrasted the facts before it with "day-of-trial" requests, in which courts are justified in finding "the lateness of the continuance request to be a significant factor which justified a denial where there were no compelling circumstances to the contrary." (*Id.* at p. 792, fn. 4.)

The court also noted that "there were no circumstances which warranted the limitation of appellant's right to counsel based on considerations of judicial efficiency. [Citations.] [¶] The record fails to show that a continuance would have significantly inconvenienced the court or the parties. [Citation.] . . . No mention of inconvenience to jurors . . . was ever made." (*Courts, supra,* 37 Cal.3d at p. 794.)

Azzara's request on the first day of trial for a 30-day continuance, and then later his request to continue the case into the next week, was a far cry from the request to continue to hire private counsel by the defendant in *Courts*. *Courts*

12

emphasized that a "day-of-trial" request for a continuance like Azzara's constitutes a significant factor justifying denial of the continuance absent a compelling justification (*Courts, supra,* 37 Cal.3d at p. 792, fn. 4), yet Azzara offered no explanation for the lateness of his request. Moreover, as of the first day of trial, he admitted he had not yet gathered the funds for the retainer, and thus "participation by a particular private attorney was still quite speculative." (*Id.* at p. 791, fn. 3.) Finally, unlike in *Courts*, where there was no showing of prejudice to jurors or others, the trial court in the instant case made quite clear that the 36 prospective jurors who were already on their way to the courtroom for voir dire would be inconvenienced by the late request for a continuance. Further, the record reveals that one of the prosecution's witness was traveling from out of town to testify and would have been inconvenienced by a delay of the trial. The trial court therefore had ample justification based on the circumstances in Azzara's case to deny his last-minute request for a continuance.

## III. *Marsden Hearing*

Azzara contends that the trial court erred in failing to hold a *Marsden* hearing on the third day of trial, after he expressed dissatisfaction with his appointed counsel.

### A. *Background*

On the final day of trial, Azzara indicated to the court that he had a disagreement with Garber over a witness whom he wanted to call in his defense. He stated that he gave the address of the witness to Garber several days before, but he had not been able to provide a phone number because his bail had been revoked and his cell phone, which contained the phone number, was taken away from him.

13

Garber indicated that he had not been able to go to the address Azzara provided for the witness because he only received it once trial had begun and in any event he disagreed with Azzara about the "efficacy of his testimony." Azzara indicated that he had brought the witness, Craig Neilson, with him to court over a year earlier, and that the witness's testimony was important to his defense. He indicated that he had planned to pick up Neilson and bring him to the trial, but when his bail was revoked he could no longer do so.

The court indicated that it would call the witness if he were present, but since the witness was not available and Azzara was not introducing any other evidence, the court had no choice but to proceed to instruct the jury. Over Azzara's objection that he was "getting railroaded," the court then instructed the jury.

### B. *No Marsden Hearing Was Required*

"The governing legal principles [derived from *Marsden, supra*] are well settled. 'Under the Sixth Amendment right to assistance of counsel, "'"[a] defendant is entitled to [substitute another appointed attorney] if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."'" [Citation.] Furthermore, "'"[w]hen a defendant seeks to discharge appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance."'" [Citations.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 95; see *People v. Smith* (2003) 30 Cal.4th 581, 604; *People v. Hart* (1999) 20 Cal.4th 546, 603.)

14

"[A] trial court's duty to permit a defendant to state his reasons for dissatisfaction with his attorney arises when the defendant in some manner moves to discharge his current counsel.  The mere fact that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court under a duty to hold a *Marsden* hearing."  (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. omitted (*Lucky*).)  In *People v. Sanchez* (2011) 53 Cal.4th 80, the Supreme Court reiterated that a *Marsden* hearing is required only when "there is 'at least some clear indication by defendant,' either personally or through his current counsel, that defendant 'wants a substitute attorney.'"  (*Id.* at p. 90; see *Lucky, supra,* 45 Cal.3d at p. 281, fn. 8 ["We do not necessarily require a proper and formal legal motion, but at least some clear indication by defendant that he wants a substitute attorney."].)

In this case, during the colloquy with the court during trial, although Azzara complained that Garber had not tracked down a witness, he never gave any indication that he wanted to substitute counsel.  He complained that he was "getting railroaded" by the court, which would not delay the completion of trial to allow time for the witness to be located, but at no point did Azzara suggest that he wanted to discharge Garber and get a new attorney appointed to defend him.  Because he gave no clear indication that he wanted a substitute attorney, the trial court did not err in failing to hold a *Marsden* hearing.

15

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

SUZUKAWA, J.

16