Filed 8/26/13  P. v. Bullock CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055532 |
| v. | (Super.Ct.No. RIF10005569) |
| ERIC VINCENT BULLOCK, | OPINION |
| Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County.  Harry A. Staley, Judge.  (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Theresa Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lise Jacobson, and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

After defendant Eric Vincent Bullock was involved in an accident with a truck on State Route 60, a jury convicted him of two Vehicle Code offenses:  driving under the influence of alcohol causing injury and driving with a blood alcohol content of .08 percent or greater causing injury.  (Veh. Code, § 23153, subds. (a) and (b).)  The jury also found defendant personally inflicted great bodily injury within the meaning of Penal Code sections 12022.7, subdivision (a), and 1192.7, subdivision (c)(8).[1]  The court sentenced defendant to six years in prison.

At the scene, defendant blamed the accident on his car being rearended by another vehicle, forcing his car into the truck.  At trial, defendant claimed his car had stalled, causing him to lose control.  On appeal, defendant makes four arguments:  there was insufficient evidence for his convictions because of the possibility of a mechanical failure; the trial court erred by not instructing the jury regarding the defense of sudden peril; there was prosecutorial error; and the trial court erred in imposing the upper term of three years.  We reject defendant's appeal and affirm the judgment.

# II

## STATEMENT OF FACTS

### A.  Prosecution's Evidence

Kevin Martin testified that he was traveling about 70 miles per hour, and using

---

[1] The court granted a motion to strike defendant's 1984 serious felony prior.

cruise control, in the fast lane on the 60 Freeway–when a green car passed him on the left in the adjacent car pool lane. After passing, the green car swerved and hit a big rig. The big rig veered left, rolled over the car, and hit the median. Martin slammed on his brakes, stopped, and waited to give a report. Defendant, the driver of the green car, emerged, looking bewildered and shocked. The right side of the car was badly damaged.

A CHP officer, James Hefele, responded at the scene and saw "a very badly damaged small vehicle" and a semi tractor-trailer truck in the HOV lane. A passenger was alive but trapped in the back of the car with his head bleeding heavily. Blood was seeping out the door frame onto the concrete. The passenger had lacerations on his head, arms, and upper torso. He was transported by ambulance to the hospital. Based on his investigation, Officer Hefele determined the accident occurred when defendant's car made an "unsafe turning movement" and hit the truck's left front wheel.

The officer questioned defendant who said he was driving from Los Angeles to Moreno Valley. Defendant denied using any medications or prescriptions. Defendant indicated the car was mechanically sound but the officer did not inspect it. None of the other witnesses mentioned mechanical problems. Defendant claimed he had been rearended and forced into the path of the truck. No third car was involved.

Defendant smelled like alcohol and admitted drinking a couple of beers. Based on the odor of alcohol, the driver's red, watery eyes, and his slow, slurred speech, Officer Hefele suspected he was under the influence. The field sobriety tests indicated defendant was intoxicated. Defendant's breath samples at the scene were .137 and .134, making defendant under the influence.

3

The subsequent blood test at the hospital showed a blood alcohol level of .14 percent. At the time of the accident, defendant's blood alcohol level was .16 percent, causing mental impairment for safe operation of a car. Defendant had to have consumed about six and a half beers to reach those blood alcohol levels.

The injured passenger, Victor Lewis, testified that he had been friends with defendant for 20 years. Earlier in the day they had gone to Los Angeles to pay their respects to a friend who had died. Lewis drank three or four beers. On the way home, Lewis was in the back seat and defendant's brother, Gordon was seated in front. Defendant was sober and driving normally at a safe speed. Lewis recalled arguing with Gordon and asking for a cigarette when the car "went out," or stalled, while it was in the car pool lane and the big rig was in the fast lane. The car had stalled earlier that day. During cross-examination, Lewis acknowledged that he had not disclosed the details about stalling before trial. After the accident, Lewis was unconscious and awoke in the hospital. His arm was broken and required surgery and he had stitches for the lacerations to his head.

B. *Defense Evidence*

Defendant's brother, Gordon, testified while incarcerated on a charge for felony assault. The day of the accident, defendant and Gordon picked up Lewis in Moreno Valley and drove to Los Angeles. Gordon drank a couple of beers. Lewis drank a few beers. Defendant did not drink alcohol. Gordon testified the car had stalled during the course of the day but he could not recall the details.

4

On the drive home, defendant was driving normally but Lewis was making noise in the back seat and reaching for a cigarette when the car "cut off." As Gordon turned, talking to Lewis, the car began moving to the right. Gordon braced himself and it appeared the truck was moving toward the car. The steering wheel seemed to be locked. The crash knocked the car into the median wall and the truck ran over it. Gordon did not previously mention the car stalling to the defense investigator.

Defendant testified he did not drink alcohol during the trip to Los Angeles because he was taking medication for high blood pressure and bipolar disorder. Lewis and Gordon were drinking at the wake. The car had problems with stalling on the way back to Moreno Valley. Before the accident, Gordon and Lewis were squabbling. Lewis was reaching for a cigarette when the car "cut off" and veered to the right. Defendant could not control the car by steering or braking. Defendant's car collided with the truck and the truck hit the median wall. The airbag struck defendant in the face.

Defendant contradicted most of Officer Hefele's testimony. Defendant denied telling the officer he had drunk some beer. Defendant also disputed that he had told the officer he was not taking medication. He denied taking field sobriety tests. Defendant was evasive about his claim of being rearended before the accident until, finally, he admitted he was not rearended.

Defendant admitted he was previously arrested for driving under the influence in 2000 and 2003. He had been convicted of a domestic violence felony in 2007 or 2008.

5

SUFFICIENCY OF EVIDENCE

To establish a violation of Vehicle Code section 23153, three elements must be proven beyond a reasonable doubt: (1) driving a vehicle while under the influence of an alcoholic beverage or drug, (2) when so driving, committing some act which violates the law or is a failure to perform some duty required by law, and (3) as a proximate result of this violation of law or failure to perform a duty, another person was injured. (*People v. Verlinde* (2002) 100 Cal.App.4th 1146.)

Defendant maintains the evidence was insufficient to establish the second element, namely, that defendant committed an unlawful act or failed to perform a legal duty. Defendant relies on his own testimony and the testimony of the two passengers that the accident was caused by some failure in the vehicle. Additionally, Martin, the independent witness, testified he had not seen any erratic driving, straddling lanes, or excessive speeding by defendant's car before the accident but that defendant's car veered suddenly into the fast lane. According to defendant, the testimony showed defendant had responded to a sudden failure in his vehicle, making it inoperable and unsteerable.

Defendant relies upon the doctrine of imminent peril to assert that such evidence is insufficient to establish either a violation of the Vehicle Code or general negligence liability: "A person facing a sudden and unexpected emergency situation not caused by that person's own negligence is required only to use the same care and judgment that an ordinarily careful person would use in the same situation, even if it appears later that a different course of action would have been safer." (CALCRIM No. 590; *People v.*

*Boulware* (1940) 41 Cal.App.2d 268, 269-270 [sudden peril defense considered where defendant, who was under the influence of alcohol, swerved and caused a collision]; *People v. Clark* (1962) 202 Cal.App.2d 513, 518 [imminent peril instruction appropriate for defense where intoxicated driver's sudden swerve into opposite lane collided with truck].) Defendant argues the evidence was insufficient to prove beyond a reasonable doubt that, in addition to driving while under the influence, defendant concurrently committed a separate unlawful act or failed to perform a legal duty.

Defendant's argument, however, does not correctly apply the appellate standard of review for sufficiency of the evidence which favors the judgment below. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *People v. Ledesma* (2006) 39 Cal.4th 641, 722-723.) A reviewing court must "presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. [Citations.]" (*People v. Bloyd* (1987) 43 Cal.3d 333, 346-347.) The question is, after drawing all inferences in favor of the judgment, could any rational trier of fact have found defendant guilty beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) Before a judgment of conviction can be set aside for insufficiency of the evidence to support the trier of fact's verdict, it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support it. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) A review of circumstantial evidence uses the same standard as sufficiency of the evidence. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138.)

Instead, defendant ignores the standard of review for sufficiency of the evidence and asserts that the evidence was consistent with his version of events–that defendant lost

7

control of his car because of a mechanical failure. If the reviewing court finds "that the circumstances also might reasonably be reconciled with a contrary finding [it] would not warrant reversal of the judgment." (*People v. Proctor* (1992) 4 Cal.4th 499, 529.) It is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends; the reviewing court must give due deference to the trier of fact and not substitute its evaluation of a witness's credibility for that of the fact finder. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) A reviewing court presumes the existence of every fact in support of the judgment that the jury "could reasonably deduce from the evidence." (*People v. Bloyd, supra*, 43 Cal.3d at pp. 346-347.) After having drawn all inferences in favor of the judgment, the reviewing court then determines whether "any rational trier of fact" could have found the defendant guilty beyond a reasonable doubt. (*Jackson v. Virginia, supra*, 443 U.S. at pp. 318-319.)

We conclude substantial evidence supports the jury's finding that defendant violated the law or failed to perform a legal duty. The jury was instructed on violations of (1) Vehicle Code section 22348, exceeding the speed limit; (2) Vehicle Code section 22107, making an unsafe turn; (3) Vehicle Code section 24002, operating an unsafe vehicle; and (4) Vehicle Code section 21655.8, making an improper exit from a carpool lane. The prosecution also alleged that defendant failed to exercise ordinary care at all times and failed to maintain proper control of his vehicle. The jury was required to find that defendant committed at least one illegal act or failed to perform at least one duty, and

8

that the jurors must agree on which act was committed or which legal duty defendant failed to perform.

Martin testified the posted speed limit was 65 miles per hour and that he was driving 70 miles per hour when defendant passed him. Thus, defendant was exceeding the speed limit. Additionally, defendant's car swerved out of the carpool lane and, in Officer Hefele's opinion, defendant's unsafe turn caused the collision. Substantial evidence therefore supported that defendant both made an unsafe turn and an improper exit from the carpool lane.

The testimony at trial about defendant's car stalling was refuted by other evidence. The investigating officer concluded that defendant's intoxication caused him to make an unsafe turning movement. At the scene, defendant said the car did not have mechanical problems and he blamed the accident on another car. The jury could reasonably have concluded that defendant's statements at the scene were more credible than his testimony at trial. A rational jury could also have concluded that defendant's actions violated Vehicle Code section 24002 if he failed to exercise ordinary care by driving an unsafe vehicle.

Substantial evidence therefore supports the jury's findings and defendant's convictions for driving under the influence causing injury and driving with a blood alcohol content greater than .08 percent.

9

IV

INSTRUCTION ON THE DEFENSE OF SUDDEN PERIL

In a related argument, defendant contends the trial court erred by not instructing the jury about sudden peril based on CALCRIM No. 590: "A person facing a sudden and unexpected emergency situation not caused by that person's own negligence is required only to use the same care and judgment that an ordinarily careful person would use in the same situation, even if it appears later that a different course of action would have been safer." Defendant submits that such an instruction on the standard of care in the face of sudden peril was supported by the evidence presented at trial and not giving the instruction prejudicially lessened the People's burden of proof in violation of defendant's state and federal constitutional rights of due process.

The Benchnotes for CALCRIM No. 2100 (driving under the influence causing injury), state, "On request, if supported by the evidence, the court must instruct on the 'imminent peril/sudden emergency doctrine. [Citation.] The court may use the bracketed instruction on sudden emergency in CALCRIM No. 590, . . ." In this case, defense counsel did not request the pinpoint instruction and there was no sua sponte duty to give the instruction. (*People v. Saille* (1991) 54 Cal.3d 1103, 1117.)

Furthermore, not giving the instruction was either harmless or not prejudicial. The trial court did give an instruction sua sponte on accident; CALCRIM No. 3404 states: "The defendant is not guilty of Driving under the influence causing injury nor driving with a blood alcohol level above the legal limit causing injury if he acted or failed to act without the general intent required for that crime, but acted instead accidentally. You

10

may not find the defendant guilty of those two crimes unless you are convinced beyond a reasonable doubt that he acted with the required general intent." In light of the substantial evidence that defendant committed several Vehicle Code violations while driving drunk, it is not reasonably probable that defendant could have achieved a different outcome with an instruction on sudden peril. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Holt* (1997) 15 Cal.4th 619, 703.) Therefore, defendant's alternative claim for ineffective assistance of counsel fails because the representation defendant received was not legally deficient. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.)[2]

V

PROSECUTORIAL ERROR

Defendant next challenges the prosecutor's rebuttal argument to the jury. The prosecutor criticized the length of defense counsel's closing argument: "[I]f you have a defense that points to a legitimate fact in evidence, it doesn't take three hours to explain. . . . But it does take three hours to try and convince twelve people who know that a man is guilty that maybe he's not. [¶] . . . [¶] Don't fall for it, okay." The prosecutor then told the jury that "[b]eyond a reasonable doubt means enough evidence to make guilt reasonable and innocence unreasonable," a formulation the court agreed was wrong and warranted a limiting instruction to the jury. In discussing the evidence, the prosecutor said, "If you're charged with driving under the influence causing injury, what

---

[2] We reject defendant's strained argument that the jury's query about the effect of defendant's medications had any bearing on the issue of sudden peril.

11

does that mean? It means you got in an accident where somebody got hurt. It's not the big rig's fault." He elaborated about reasonable doubt, "Let's talk about why it's not reasonable for you to believe the car shut off. There's literally no evidence to support it. They don't have to produce anything. But if they are going to argue it, you have nothing at all, zero —." He further argued, "Mr. Jones [defense counsel] made a comment a few minutes ago, testimony is evidence. If you believe it, okay" but then the prosecutor accused defendant, his brother, and his friend of lying. While the defense repeatedly objected–and the court sustained some of those objections—the court admonished the jury only once that what the attorneys say in closing argument is "just argument. In the end, you are to rely on the facts as you determine them and follow the law as it is stated to you."

A summary of defendant's argument is that the prosecutor committed misconduct by repeatedly misstating the burden of proof and implying that the jury should find appellant guilty because defendant had not provided affirmative, physical evidence to prove the mechanical defect in the vehicle. The prosecutor's implication that the defense had failed to meet a burden to prove a defense through physical or other tangible evidence had the overall cumulative effect of depriving defendant of his constitutional rights to a fair trial.

Prosecutorial misconduct is the use of a trial tactic by a prosecutor that wrongly persuades a jury to render a verdict independent of the properly admitted trial evidence. (*People v. Hill* (1998) 17 Cal.4th 800, 822-823.) Comments on the state of the evidence or on the defense's failure to call witnesses, introduce evidence, or rebut the People's

12

case are generally permissible. (*People v. Medina* (1995) 11 Cal.4th 694, 755.) A prosecutor may not suggest that "'a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence.'" (*People v. Woods* (2006) 146 Cal.App.4th 106, 112.) A prosecutor's misstatement of the reasonable doubt standard constitutes prosecutorial misconduct. (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1269.) Prosecutorial misconduct can occur without bad faith. (*Hill,* at p. 821.)

A prosecutor's conduct violates the federal Constitution only if it is so egregious, and infects the trial with such unfairness, that the resulting conviction is a denial of due process. (*People v. Smithey* (1999) 20 Cal.4th 936, 960.) Conduct that does not constitute such fundamental unfairness is misconduct under state law only if it involves "'"the use of deceptive or reprehensible methods to attempt to persuade . . . the jury."'" (*People v. Benavides* (2005) 35 Cal.4th 69, 108.) During closing argument a party has broad discretion to argue the evidence vigorously and to comment on reasonable inferences that may be drawn therefrom. (See *People v. Bemore* (2000) 22 Cal.4th 809, 846.) To prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show not only prejudice but also a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. (See *People v. Ayala* (2000) 23 Cal.4th 225, 283-284; *People v. Frye* (1998) 18 Cal.4th 894, 970.)

Applying the foregoing principles, we do not find any prejudicial prosecutorial error. The prosecutor's several comments about the weakness of defendant's case were not improper. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339-1340; *People v.*

13

*Medina, supra*, 11 Cal.4th at p. 755.) As a general rule, prosecutors may comment during closing argument on a defendant's failure to present exculpatory evidence without erroneously implying that the defendant bears the burden of proof. (*People v. Lewis* (2004) 117 Cal.App.4th 246, 256-257; *Medina,* at p. 755.) Here, the prosecutor properly commented on the state of the evidence without shifting the burden of proof or implying any "duty" on the part of the defense to produce witnesses or other evidence.

Regarding the prosecutor's inartful formulation of "beyond a reasonable doubt," it is presumed that arguments of counsel are viewed by the jury as the statements of an advocate attempting to persuade and carry less weight than do instructions from the court. (*Boyde v. California* (1990) 494 U.S. 370, 384; *People v. Seaton* (2001) 26 Cal.4th 598, 646.) The trial court's admonishment to the jury to follow the instructions as given by the court was sufficient to cure any possible prejudice. (See *People v. Montiel* (1993) 5 Cal.4th 877, 937-938.) The jury is presumed to have understood and followed the court's instructions. (*People v. Medina, supra,* 11 Cal.4th at p. 745; *People v. Boyette* (2002) 29 Cal.4th 381, 436.)

Finally, the prosecution was allowed to question the credibility of the defense evidence presented at trial: "The prosecutor is permitted to urge, in colorful terms, that defense witnesses are not entitled to credence [and] to argue on the basis of inference from the evidence that a defense is fabricated, . . ." (*People v. Pinholster* (1992) 1 Cal.4th 865, 948.)

Even assuming the prosecutor's remarks could be construed as improper, they did not involve """the use of deceptive or reprehensible methods to attempt to persuade . . .

14

the jury."'"" (*People v. Benavides, supra*, 35 Cal.4th at p. 108.) There is also no reasonable likelihood the jury understood or applied the prosecutor's remarks in an improper or erroneous manner. (See *People v. Ayala, supra,* 23 Cal.4th at pp. 283, 284.) It is not reasonably probable defendant could have achieved a more favorable result absent the subject comments. (See *People v. Pigage* (2003) 112 Cal.App.4th 1359, 1375.) The trial court explained to the jury that the burden of proof rested with the prosecution and instructed the jury on the reasonable doubt standard, that the statements of counsel do not constitute evidence, and that, if the attorney's comments conflicted with the law, the jury was to follow the court's instructions. There is no reasonable likelihood the jury construed or applied any of the prosecutor's remarks in an objectionable fashion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) The prosecutor's remarks did not constitute prejudicial misconduct warranting reversal. (*People v. Ervin* (2000) 22 Cal.4th 48, 101.)

VI

THE UPPER TERM SENTENCE

The trial court imposed the upper term and a consecutive sentence for the great bodily injury enhancement, resulting in a total sentence of six years. The court denied probation and imposed an upper term sentence of three years for violating Vehicle Code section 23153, subdivision (a), with a consecutive term of three years for the great bodily injury enhancement, pursuant to Penal Code section 12022.7, subdivision (a). Defendant contends the court abused its discretion by not properly considering aggravating and

15

mitigating factors. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847; Cal. Rules of Court, rule 4.410(a).)

Under Penal Code section 1170, subdivision (b), "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, . . . [t]he court shall set forth on the record the reasons for imposing the term selected and the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." The trial court is "required to specify reasons for its sentencing decision." (*People v. Sandoval, supra*, 41 Cal.4th at pp. 846-847.) The court is not required "to cite 'facts' that support its decision or to weigh aggravating and mitigating circumstances." (*Sandoval,* at p. 847.) Nevertheless, defendant maintains the court improperly relied on the 1984 prior strike conviction that the court dismissed pursuant to Penal Code section 1385. We conclude the trial court did not abuse its discretion in imposing the upper term.

Defendant did not raise an objection below so this issue has been waived. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751-756.) But, in any event, the trial court appropriately imposed the upper term because the trial court's reasons adequately support the upper term: "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions. (See, e.g., Cal. Rules of Court, rule 4.420(c) [fact underlying an enhancement may not be used to impose the upper term unless the court strikes the enhancement]; *id.,* rule 4.420(d) [fact that is an element of the crime may not be used to impose the upper term].) The [trial] court's discretion to identify aggravating

16

circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.' (Cal. Rules of Court, rule 4.408(a).)" (*People v. Sandoval, supra*, 41 Cal.4th at p. 848.) As defendant recognizes, a single aggravating factor will support an upper term sentence. (*People v. Osband* (1996) 13 Cal.4th 622, 728, 732; *People v. Black* (2007) 41 Cal.4th 799, 813; Cal. Rules of Court, rule 4.420(b).)

The fact that a sentencing allegation is stricken under section 1385 "'is not the equivalent of a determination that [the] defendant did not in fact suffer the conviction.'" (*People v. Garcia* (1999) 20 Cal.4th 490, 496, 499.) Even after a court strikes or dismisses a prior conviction allegation, "the [prior] conviction remains part of the defendant's personal history, and a court may consider it when sentencing the defendant for other convictions, including others in the same proceeding." (*Id.* at p. 499; see also *In re Varnell* (2003) 30 Cal.4th 1132.) The trial court's ability to dismiss a criminal action "in furtherance of justice" does not authorize it to strike facts that need not be charged or alleged, such as the sentencing factors that guide the court's decisions whether to grant probation or to select the upper, middle or lower term for an offense. (*People v. Lara* (2012) 54 Cal.4th 896, 900-901.)

In *Varnell*, the trial court ruled that dismissal of a prior had not eliminated "the *fact* of the prior conviction." (*In re Varnell, supra,* 30 Cal.4th at p. 1135.) The Supreme Court reversed the Court of Appeal, stating that the dismissal of a charged prior conviction is not a "'determination that defendant did not in fact suffer the conviction'" and that the trial court lacked the power to disregard a "sentencing factor" that rendered the defendant ineligible for Proposition 36 sentencing. (*Varnell,* at p. 1138.) The

17

Supreme Court further held that because the denial of probation under Proposition 36 did not increase the defendant's penalty, his prior conviction was not a matter that had to be pleaded and proven.  (*Varnell,* at pp. 1141-1142.)

Applying *Varnell*'s analysis to the present case, the fact that defendant's prior conviction was stricken under Penal Code section 1385, did not preclude the trial court from considering the conviction and relying on that conviction, along with defendant's other criminal history, in selecting the upper term.  Here, the prosecution alleged that defendant had suffered a prior strike conviction for robbery, a serious and violent felony.  At sentencing, the trial court dismissed the prior conviction allegation pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.  The trial court cited defendant's criminal history, including two separate 1984 convictions for assault with a deadly weapon and robbery, a 2005 conviction for driving under the influence and driving with a revoked or suspended license, a 2008 conviction for domestic violence, and another 2008 conviction for possession of ammunition.

As noted, a trial court may base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to certain prohibitions.  The court's discretion to rely on and identify aggravating circumstances is otherwise limited only by the requirement that they be reasonably related to the decision being made.  (*People v. Sandoval, supra*, 41 Cal.4th at p. 848.)  Here, defendant's numerous prior convictions, in addition to the prior strike that was dismissed, were appropriate factors the court could rely on in imposing the upper term.  Contrary to defendant's argument, the court did not rely only upon defendant's prior prison term.

18

The trial court's sentencing decision was "not arbitrary and capricious," was "consistent with the letter and spirit of the law," and was based upon an "'individualized consideration of the offense, the offender, and the public interest.'" (*People v. Sandoval, supra*, 41 Cal.4th at p. 847.)

## VII

## DISPOSITION

Sufficient evidence supports defendant's convictions. There was no prejudicial instructional, prosecutorial, or sentencing error.

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

KING
J.

19