Filed 4/28/21  P. v. Khani CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE, | D076532 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD279510) |
| RAYMOND KHANI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Melissa Mandel and A. Natasha Cortina, Supervising Deputy Attorneys General, Annie Fraser, Deputy Attorney General, for Plaintiff and Respondent.

In a first trial, a jury convicted Raymond Khani of vandalism under $400 in damage (Pen. Code,[1] § 594, subd. (a)(b)(2)(A)), but deadlocked on an assault count. At a retrial before the same judge, the jury convicted Khani of assault with a deadly weapon and found true an allegation that he personally used a knife. (§§ 245, subd. (a)(1); 1192.7, subd. (c)(23).) The court sentenced Khani to three years in prison and imposed certain fees, fines and assessments.

Khani contends as to the second trial that the court violated his constitutional and statutory rights by (1) conducting approximately 30 minutes of voir dire in his absence; (2) restricting his recross-examination of a witness; and (3) imposing a $600 restitution fine and $224 in fees and assessments without first determining his ability to pay under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## FACTUAL BACKGROUND

Khani does not challenge the sufficiency of the evidence to support his convictions, therefore we need only briefly summarize the facts to provide context. In November 2018, J.R. and a coworker stopped at a convenience store before going to work. J.R. impermissibly parked his van in a spot reserved for people with disabilities. As J.R. waited in the vehicle, Khani arrived in his vehicle, which had a sticker permitting him to park in that spot. After Khani demanded that J.R. move and J.R. refused, Khani went to his car and grabbed something. J.R. got scared. Khani returned holding a knife and approached J.R. in a threatening manner. J.R. jumped into his van to get something to use in self-defense, and found a large cardboard tube. Khani slashed a tire on J.R.'s van. The jury saw surveillance video of the incident, including J.R. holding the tube.

---

[1] Undesignated statutory references are to the Penal Code.

DISCUSSION

I. *Defendant's Absence From the Court During a Part of Voir Dire*

Khani contends his assault conviction should be reversed because he was absent during 30 minutes of voir dire without the court making a finding that he had voluntarily absented himself or taking a waiver of his presence.

A. *Background*

On the retrial's first day, Khani's attorney requested a continuance based on Khani's ill health. The court granted the request, but several times warned about the importance of Khani returning to court for retrial: "[T]he Court will proceed unless [Khani] is hospitalized somewhere, unless I have some medical indication that that is not advised." The court told defense counsel, "If [Khani] is not here, then I consider he has voluntarily absented himself and [will] try the case in his absence, absent information that he is in the hospital somewhere or there is strong medical advice that he should not go to trial. So if you think that is unreasonable, let me know. Otherwise, we will proceed on that basis." The court stated, "So balancing all the interests here, I think there is good cause to continue the trial until Monday morning. But boy, if he is not here, you better have some doctor's [*sic*] or something from the hospital . . . otherwise, we will go ahead in his absence. I will consider he has voluntarily absented himself and proceed in his absence." Defense counsel responded, "Understood."

The court directly addressed Khani: "[I]f you are not in the hospital somewhere and you are not here Monday morning, I will consider you voluntarily absented yourself, and we will try this case in your absence. And I don't think that's in your best interest. In 45 years, I'm not sure I have ever done that, but I can do that. I have the power to do that."

3

Khani went to court on Monday, August 12, 2019, as scheduled, and the court conducted voir dire that entire day. The court stated the next day's session would begin at 9:00 a.m., and it hoped to finish voir dire and begin hearing testimony from out-of-town witnesses, one of whom needed an interpreter.

The following day, Khani did not show up at the courthouse for the scheduled start time. At 9:27 a.m., defense counsel informed the court that she had telephoned Khani twice but he did not answer. The court stated: "But he does have a cell phone. So presumably—it is reasonable to assume he would have answered the phone, I think." Defense counsel telephoned Khani a third time and left a message for him. She also e-mailed him. The court told counsel: "[B]y the time we get everybody in here and seated, it will be 9:30 [a.m.]. So I think that is certainly more than enough time, I think, to allow for understandable public transportation delays or private vehicle delays."

When the court resumed jury selection at 9:29 a.m., it told the prospective jurors: "Mr. Khani is not here, as you probably noticed. And I don't think you should take that as any disrespect on his part or disregard. He relies on public transportation, and so he may have had some transportation delays in that regard. But everything we do here is on the record, and his attorney is here to participate. So, hopefully, he will arrive shortly." During Khani's absence, both counsel agreed to dismiss one prospective juror for cause because she stated she would have difficulty being objective and comply with the presumption of innocence for the defendant because of the allegation that he had used a weapon.

Khani reached the courthouse at 10:00 a.m. The judge told him, "Your attorney has been here, and everything has been on the record. We are just talking to some of the newly-seated jurors. So she can bring you up to speed

4

on that.  And we will take a recess before any more challenges are exercised.  So she can bring you up to date in that regard."  Khani's counsel explained to the court that Khani was late because he did not reach the bus stop on time to catch the first bus, and the second bus was late, therefore Khani had to catch the third bus.

B.  *Standard of Review and Applicable Law*

Voir dire of prospective jurors is " 'a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present.' "  (*People v. Wall* (2017) 3 Cal.5th 1048, 1059.)  The California Supreme Court has stated:  " 'A criminal defendant's right to be present at trial is protected under both the federal and state Constitutions.'  [Citations.]  [¶]  But the right is not an absolute one.  [Citation.]  It may be expressly or impliedly waived.  [Citations.]  As relevant here, the high court has stated that 'where the offense is not capital and the accused is not in custody, *the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this* does not nullify what has been done or prevent the completion of the trial, but, on the contrary, *operates as a waiver of his right to be present and leaves the court free to proceed* with the trial in like manner and with like effect as if he were present.'  [Citations.]  Section 1043[,subdivision] (b)(2) has adopted this majority rule as state law."  (*People v. Espinoza* (2016) 1 Cal.5th 61, 72.)

"The role of an appellate court in reviewing a finding of voluntary absence is a limited one.  Review is restricted to determining whether the finding is supported by substantial evidence."  (*People v. Espinoza, supra,* 1 Cal.5th at p. 74.)  A crucial question is always, " ' "Why is the defendant absent?" ' "  (*People v. Pigage* (2003) 112 Cal.App.4th 1359, 1369.)

This question can rarely be answered at the time the court must make the determination to halt or proceed with the trial.  (*Ibid.*)  Thus, the reviewing court considers not only the information available to the trial court at the time of its decision but any additional information presented at the time of the defendant's subsequent appearance that either affirms the initial decision of the court or demands that the defendant be given a new trial.  (*Ibid.*)

C.  *Analysis*

We conclude that the court did not err by proceeding with voir dire during Khani's short absence from the courtroom because it impliedly deemed Khani voluntarily absent.  As set forth above, the court had previously informed Khani that he must attend the proceedings or the court would proceed without him.  Khani was nonetheless late due to transportation problems.  When the court proceeded without him, it had no information regarding the cause of Khani's delay.  It only knew it had warned Khani regarding his timely attendance at the proceedings.  But the court correctly assumed that Khani's delay related to transportation and therefore granted him 30 minutes of leeway to reach the courthouse.  It was only when that time elapsed and Khani still did not arrive that the court resumed voir dire.  Nothing in the record or Khani's briefing explains why Khani failed to respond to his attorney's phone calls and e-mail that morning or otherwise inform the court he would be late.  We conclude that ample facts supported the court's decision to proceed with voir dire based on the information available to it contemporaneously as well as the information it subsequently learned regarding Khani's tardiness.  "Here the record, which we have described, supports the trial court's view that defendant was ' "aware of the processes taking place," ' that he knew ' "his right and of his obligation to be present," ' and that he had ' "no sound reason for remaining away." '

6

[Citation.] As such, defendant implicitly waived his right to be present. [Citation.] No more was constitutionally required." (*People v. Espinoza, supra,* 1 Cal.5th at p. 74.)

In any event, even assuming error, we have no basis for reversal because Khani has failed to show prejudice. (*People v. Panah* (2005) 35 Cal.4th 395, 443; *People v. Bradford* (1997) 15 Cal.4th 1229, 1357 ["Defendant has the burden of demonstrating that his absence prejudiced his case or denied him a fair trial"].) Khani argues "[he] was absent at least thirty minutes from jury selection. During this time period seven prospective jurors were subject to voir dire by the court, and one additional juror attempted to be excused for hardship. [Khani] was not allowed to listen to the answers of these jurors during time period [*sic*]—information that was critical in allowing appellant to assist in the selection of his jury." We conclude that this claim of prejudice is unfounded. During Khani's brief absence from voir dire, the parties agreed to remove only one prospective juror based on her stated inability to be objective. Khani does not claim the court impermissibly removed this individual. Moreover, the court provided a recess specifically for Khani to discuss with his counsel the proceedings held in his absence, and if he had any concerns about any of the remaining prospective jurors, he had opportunities to excuse them because the defense had not yet exhausted its peremptory challenges. (See *Panah, supra,* at p. 443.)

## II. *Recross-examination of J.R.*

Khani contends that the court violated his constitutional rights to due process and confrontation by restricting his counsel's recross-examination of J.R. He argues, "This case boiled down to credibility. And [he] was not allowed to impeach the credibility of [J.R.]."

7

Khani further argues: "The recross-examination would have supported [his] defense in several ways: first it would have cast doubt on [J.R.'s] entire version of events regarding whether [Khani] assaulted him or had simply cut his tire. And allowing the recross-examination would have given [Khani] the opportunity to test the veracity of [J.R.]. If the jury believed that [J.R.] testified untruthfully or inaccurately, then they could have disregarded all of his testimony. [¶] Finally, it was fundamentally unfair to restrict defense counsel's right to conduct recross because the questions of the prosecutor made it appear that [J.R.] in fact gave consistent answers and the defense had tried to confuse him. Considering the open-ended questions of the prosecutor, defense counsel should have at least been given the chance to reiterate to the jury that [J.R.] was not confused but that he was mistaken or had intentionally lied about whether he was armed during the confrontation."

A. *Background*

After the prosecutor addressed the cardboard tube issue briefly on direct examination of J.R., defense counsel cross-examined him extensively about it:

"[Defense Counsel:] You testified today that you had grabbed a tube from your car during this incident?

"[J.R.:] Yes.

"[Defense Counsel:] When you spoke with police that day, you never told police that you had armed yourself with this tube?

"[J.R.:] Because they didn't ask me.

"[Defense Counsel:] When you spoke with 911 that day, you also didn't mention that you had armed yourself with this tube?

"[J.R.:] They didn't ask me. I just answered what they were asking me. If they had asked me, I would have told them, "Yes, I had a tube." But

8

since they didn't ask me, I didn't say anything.  And besides, it was just a tube.  It wouldn't have done anything anyway.  It was [made] out of cardboard."

Defense counsel continued in this same vein:

"[Defense Counsel:]  When you initially testified at the prior hearing, the prosecutor asked you if you had anything in your hands during this incident, and you initially testified you did not have anything in your hands during the incident?

"[J.R.:]  During the incident, no.  Just when they asked me if when I went back into my van.  But I didn't have anything.

"[Defense Counsel:]  During the prior hearing, the [District Attorney] specifically asked you if you had anything in your hands during this incident, and your answer was 'No,' initially?

"[J.R.:]  Well, [Khani] had the knife.  He had it with him the whole time during the incident.  The other thing is asking me when was—well, like, I never had anything with me.  They are two different questions.

"[Defense Counsel:]  My question is:  You testified at the prior hearing, when you were initially asked by the [District Attorney], whether you had anything in your hands during the incident with Mr. Khani, and your answer was 'No'?

"[J.R.:]  Well, no, because I didn't have anything.  I only grabbed the tube when I felt—well, when [Khani] grabbed the knife.

"[Defense Counsel:]  The [District Attorney] specifically asked you, ' "When you testified earlier, you indicated that you didn't have anything in your hands when you were having this encounter with Mr. Khani." '  And your answer was, ' "Well, I didn't remember if I had something.' "

9

"[J.R.:]  Well, yes.  That's what I'm saying.  I didn't remember.  I didn't have anything with me until I went into the car and looked in the vehicle and I had a tube.  And something else, everyone saw the video.  Did they see me with anything in my hands?  Never.  I never had anything in my hands until I took the tube out.

"[Defense Counsel:]  And that is what I'm talking about is just this tube.

"[J.R.:]  Oh, yes.  Two or three seconds and then I threw it back again.

"[Defense Counsel:]  And that is what I'm trying to clarify."

Defense counsel continued the cross-examination around this issue and at one point the court sustained an objection and told defense counsel, "I think we have covered this pretty thoroughly.  So let's move on." Nonetheless, defense counsel continued with the line of questioning, and J.R. admitted that at the prior trial he testified in response to the prosecutor's questions that he did not remember what was in his hands during the altercation.  J.R. also acknowledged he had previously testified he thought it was keys that he had grabbed to defend himself.

On redirect examination, the prosecutor only briefly touched on the topic:

"[Prosecutor:]  During the incident, did you have anything in your hands?

"[J.R.:]  No.

"[Prosecutor:]  After the incident, [Khani] coming at you with a knife and slashing your tire, did you have something in your hands?

"[J.R.:]  Yes.

"[Prosecutor:]  Did you make that same distinction the last time that you testified?

"[J.R.:]  I think so, but, honestly, I don't know."

On recross-examination, defense counsel attempted to take up the topic again by asking J.R., "When you testified at the prior hearing, I asked you, 'When you initially were recalling this incident, you didn't recall having anything in your hands,' right?"  The court ruled this question was beyond the scope of redirect examination.  Defense counsel next asked J.R., "When you testified at the prior hearing, you initially didn't recall having anything in your hands?"  The prosecutor objected.  The court sustained the objection on the ground the question had been asked and answered, and told defense counsel:  "Let's move on.  If you have another topic, that's fine.  Otherwise, I will consider you finished your recross."  Defense counsel asked no further questions on recross.

At a subsequent hearing outside the jury's presence, defense counsel explained to the court that during recross-examination she was attempting to clarify the prosecutor's questions on redirect examination when the court restricted that line of questioning, in violation of Khani's constitutional rights.  The court replied that it had properly sustained the objection that defense counsel's question had been asked and answered, adding, "You beat that to death."

Defense counsel in closing argument highlighted the discrepancy in J.R.'s testimony by building on her theme that "[J.R.'s] story keeps changing.  It changed from when he talked to 911, to when he spoke with police, to when he testified the first time, and to when he testified yesterday."  Defense counsel specifically referred to the cardboard tube issue:  "Most importantly, the biggest thing [J.R.] was dishonest about was whether or not he armed himself.  Whether or not he took something out of his car and had it in his hands during this incident.  [¶]  . . .  [¶]  When [J.R.] took the stand in the

11

prior hearing, he was asked multiple times whether or not he had anything in his hands, and multiple times he said, 'No.' He was asked whether or not he got anything from his van during this incident. He said, 'No.' And it wasn't until he is confronted with the video where you can very clearly see him retrieving something from his van and then having it and arming himself with it and eventually throwing it back into the van that he finally admitted, 'Oh, yes. I actually did. I did take something out of my van. I did arm myself to try to defend myself.' "

Defense counsel directly challenged J.R.'s credibility: "So [J.R.] has changed his story multiple times. The thing about the truth is you don't have to remember it. If you are telling the truth, you are going to say the same thing every time. When you are not telling the truth, it is hard to keep track of your lies and keep track of what happened."

B. *Applicable Law*

"It is the duty of the trial judge to restrict the cross-examination of witnesses to reasonable limitations. [Citation.] The scope of the cross-examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion." (*People v. Ashley* (1958) 166 Cal.App.2d 249, 254.) Although the Sixth Amendment to the federal Constitution provides a defendant with the right to engage in appropriate cross-examination of witnesses, the trial court retains the ability to impose reasonable limits on counsel's inquiry if it is repetitive or marginally relevant. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) Additionally, the court's "limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination

been permitted." (*People v. Quartermain* (1997) 16 Cal.4th 600, 624; see *People v. Linton* (2013) 56 Cal.4th 1146, 1188 [court " 'retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues, or of marginal relevance' "].)

C. *Analysis*

We conclude the trial court did not abuse its discretion or reversibly err by sustaining the objections to defense counsel's challenged question on recross-examination because she had already abundantly explored the discrepancy between J.R.'s testimony in the first and second trials. Moreover, the court did not foreclose all further questioning on recross-examination; rather, it specifically told defense counsel that she could move on to another topic. It was defense counsel who elected to end the recross-examination at that point. Further, even if the court's ruling on the defense counsel's question on recross-examination was erroneous, any error was harmless. (*People v. Williams* (2016) 1 Cal.5th 1166, 1193.) Defense counsel in closing arguments highlighted J.R.'s different testimony in the two trials and claimed he lacked credibility, specifically with regard to the issue of the cardboard tube; accordingly, there is no reasonable probability the jury would have received " 'a significantly different impression' " (*People v. Linton, supra,* 56 Cal.4th at p. 1188) of J.R.'s credibility had the excluded recross-examination been permitted.

III. *Imposition of Fines, Fees and Assessments*

Khani contends the trial court violated his state and federal constitutional rights to due process by imposing certain fines, fees and assessments without first evaluating his ability to pay them under *Dueñas,*

13

*supra,* 30 Cal.App.5th 1157.[2]  He also argues imposition of the fines, fees and assessments violated his Eighth Amendment protection against excessive fines.  Khani maintains the record does not support an inference he had or would have in the future any ability to pay them; nothing shows he is anything other than indigent now that he has been sentenced to a prison term.

The People respond that imposition of the restitution fine did not violate Khani's constitutional rights.  The People also argue that to the extent imposition of the nonpunitive assessments implicates due process concerns, any due process violation is harmless beyond a reasonable doubt as the court implicitly concluded that Khani had the ability to pay the fines and fees.

A. *Background*

During Khani's sentencing hearing, defense counsel stated that Khani was 61 years old, in poor health, unemployed, and living out of his vehicle. The court ordered Khani to pay a $600 restitution fine under section 1202.4, subdivision (b) and an additional $600 restitution fine under section 1202.45 that it stayed unless any supervised release is revoked.  The court also

---

[2]     Cases have held that *Dueñas* was wrongly decided; that restitution fines should be reviewed not under due process principles but under the Eighth Amendment's excessive fines clause, as this court held in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844. The California Supreme Court will resolve two issues in *Kopp*: "(1) Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? [and] (2) If so, which party bears the burden of proof regarding defendant's inability to pay?"  Because we conclude any error was harmless, we need not address the areas of disagreement with *Dueñas* by this and other courts.  (See, e.g., *People v. Allen* (2019) 41 Cal.App.5th 312, 318, 326-327; *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946.)

imposed a probation revocation fee of $40 (§ 12022.44) a $30 court security fee (§ 1465.8), and a $154 criminal justice administration fee (Gov. Code, § 29550).

Immediately after the court imposed sentence, defense counsel stated, "Your Honor, could I be heard just as to the fines and fees. I understand the court did reduce them. But if the court would be inclined to delete them based on Mr. Khani's inability to pay, as he is not currently working, we'd ask [for] that under the *Duenas* case." The court said the fines and fees would remain as ordered. Considering counsel's remark and that ruling, we need not address Khani's claim that defense counsel failed to object at trial and therefore this issue was possibly forfeited, and he received ineffective assistance of counsel.

B. *Analysis*

As the People argue, we agree any assumed error was harmless beyond a reasonable doubt given future wages Khani may earn in prison. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [*Dueñas* error subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140 [same]; see *People v. Jenkins* (2019) 40 Cal.App.5th 30, 41, review granted Oct. 23, 2019, S258729, review dismissed and cause remanded July 29, 2020 [court may consider wages defendant may earn in prison on his ability to pay fines and assessments]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 [court may consider defendant's future ability to pay]; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; § 2085.5 [outlining how a restitution fine balance may be collected from prison wages].) The probation report states that Khani is a college graduate who had worked in the aerospace industry before his arrest for the instant offenses.

"[E]very able-bodied" prisoner must work while imprisoned.  (§ 2700.) "Wages in California prisons currently range from $12 to $56 a month." (*People v. Jones*, *supra*, 36 Cal.App.5th at p. 1035, citing in part Cal. Code Regs., tit. 15, § 3041.2, subd. (a)(1).)  " 'The state may garnish between 20 and 50 percent of those wages to pay the section 1202.4, subdivision (b) restitution fine.' "  (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1060; see also *Jones*, at p. 1035, citing § 2085.5, subd. (a) & Cal. Code Regs., tit. 15, § 3097, subd. (f).)  While it may take some time for Khani to pay the fines, fees and assessments, that circumstance does not support his inability to make payments on these amounts from prison wages.  (*People v. Aviles*, *supra*, 39 Cal.App.5th at p. 1077.)  Nothing in the record suggests Khani is unable to work a prison job; rather, given his past work history, inferences may be drawn to the contrary.  "In our view, this forecloses a meritorious inability to pay argument."  (*Jones*, at p. 1035.)

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:


HALLER, Acting P. J.


DATO, J.